UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
GHOST L.L.C.,                                     :
                                                  :
                          Plaintiff,              :
                                                  :        REPORT AND
          -against-                               :        RECOMMENDATION
                                                  :
GHOST FITNESS NYC, LLC and AQIB RASHID            :        21-CV-3557 (NCM)(MMH)
MAMOON,                                           :
                                                  :
                          Defendants.             :
------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Ghost L.L.C. sued Defendants Ghost Fitness NYC, LLC ("Ghost Fitness") and

Aqib Rashid Mamoon ("Rashid"), alleging trademark infringement under common law and

the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"); false designation

of origin under the Lanham Act; unfair competition under common law; and deceptive acts

and practices, injury to business reputation, mark dilution, and use of a name with intent to

deceive, in violation of New York General Business Law ("N.Y.G.B.L.") sections 133, 349,

360-*l*.  (*See generally* Compl., ECF No. 1.)[1]  Before the Court is Plaintiff's motion for default

judgment against Ghost Fitness, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2)

and Local Civil Rule 55.2.  (*See generally* Mot., ECF No. 67.)  The Honorable Natasha C.

Merle referred the motion for report and recommendation.

For the reasons set forth below, the Court respectfully recommends that Plaintiff's

motion should be **granted in part.**

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. __")
and pagination of "__ of __" in the ECF header unless otherwise noted.

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are drawn from the Complaint and documents incorporated by reference into the Complaint, which are assumed to be true for the purposes of this motion. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Plaintiff, a lifestyle sports nutrition brand, is a Nevada limited liability company with its principal place of business in Chicago, Illinois.  (Compl., ECF No. 1 ¶¶ 1, 12.)  Ghost Fitness is a New York limited liability company with its principal place of business at 291 Metropolitan Avenue, Brooklyn, New York.  (*Id.* ¶¶ 3–4.)  Rashid, founder and chief executive officer of Ghost Fitness, is a resident of New York.  (*Id.* ¶ 5.)

Plaintiff owns the following GHOST® marks (collectively, the "Ghost Marks"), using them directly or indirectly through its subsidiaries or related entities:

.    **Federal Registration No. 4,905,591 ("Trademark 1")** issued February 23, 2016, for the mark GHOST, in Class 5 for use in connection with "Dietary and nutritional supplements" and "consist[ing] of standard characters without claim to any particular font, style, size, or color";

## Ghost

.    **Federal Registration No. 6,241,769 ("Trademark 2")**, issued January 5, 2021, for the mark GHOST (Stylized) & Design, in Class 5 for use in connection with "Dietary and nutritional supplements in powder form";



. **Federal Registration No. 6,062,360 ("Trademark 3")**, issued May 26, 2020, for the mark GHOST (Stylized) & Design, in Class 21 for use in connection with "Shaker bottles sold empty";



. **Federal Registration No. 6,057,086 ("Trademark 4")**, issued May 19, 2020, for the mark GHOST (Stylized) & Design, in Class 35 for use in connection with "Online retail store services featuring dietary and nutritional supplements, sports drinks, energy drinks, and drinking accessories";



. **Federal Registration No. 4,999,968 ("Trademark 5")**, issued July 12, 2016, for the mark GHOST LEGEND, in Class 5 for use in connection with "Dietary and nutritional supplements"; and "consist[ing] of standard characters without claim to any particular font, style, size, or color" and

Ghost Legend

. **Federal Registration No. 5,051,066 ("Trademark 6")**, issued September 27, 2016 for the mark GHOST LIFESTYLE (Stylized) & Design, in Class 25 for use in connection with "Clothing, namely, t-shirts, shorts and pants; Hats."



(*See* Compl., ECF No. 1 ¶ 17; *id.*, Ex. A, ECF No. 1-4 at 2–7.)  Since inception in 2015, Plaintiff has used and advertised the Ghost Marks extensively, continuously, and exclusively in the United States and abroad.  (Compl, ECF No. 1 ¶ 13.)  Through partnerships with third-

party companies, Plaintiff offers products bearing the Ghost Marks on dietary supplements, sports nutrition products, apparel, and energy drinks sold in gyms, grocery stores, convenience stores, and specialty stores throughout the United States. (*Id.* ¶¶ 2, 19–20.) Throughout its existence, Plaintiff has invested substantially in promoting the Ghost Marks and related products through paid advertising, celebrity fitness influencer partnerships, social media promotion, and in-person events. (*Id.* ¶¶ 13, 21, 23.) As a result, the Ghost Marks have become valuable assets and the brand is widely recognized among consumers as a quality brand associated with fitness, exercise, nutrition, and an overall active lifestyle. (*Id.* ¶¶ 22, 26.)

Beginning in summer 2018, despite knowledge of Plaintiff's trademark, Defendants planned and promoted the opening of a Ghost-branded fitness facility in Williamsburg, Brooklyn (the "Facility"). (*Id.* ¶¶ 29, 32.) Defendants used the mark "Ghost" within the trade name "Ghost Fitness" (the "Infringing Mark") without Plaintiff's authorization, and intended to use the mark with related fitness and sports nutrition services. (*Id.* ¶¶ 37–38.) Defendants' decision to brand the Facility "Ghost" was at least in part to capitalize on Plaintiff's established name recognition and brand. (*Id.* ¶ 36.) On July 15, 2018, Defendants hosted a pop-up fitness event to promote the Facility's launch, though the Facility did not open until September 2, 2020. (*Id.* ¶¶ 30–31.)

Plaintiff advised Defendants of its trademark priority and rights, but Defendants refused to change their name, take any steps to mitigate potential consumer confusion, or stop using Plaintiff's registered trademarks. (*Id.* ¶¶ 34–35.) Plaintiff alleges that Defendants' actions created a likelihood of consumer confusion as to the source of Defendants' products and services and caused injury to Plaintiff's business. (*Id.* ¶ 45.)

4

## B.    Procedural History

Plaintiff initiated this action on June 23, 2021.  (*See generally* Compl., ECF No. 1.)  Defendants answered on September 7, 2021 and amended their answer on September 23, 2021.  (*See* ECF Nos. 11, 15.)  Thereafter, on October 13, 2021, Defendants requested leave to file a motion to dismiss Count VI of the Complaint, relating to Plaintiff's N.Y.G.B.L. § 349 claims.  (ECF No. 17.)  The parties appeared before the presiding district judge, who instructed Defendants to advise the Court by a date certain whether they intended to seek dispositive relief.  (Jan. 7, 2022 Min. Entry & Order.)  Defendants did not file any letters on this issue and discovery continued apace, with the Court ruling on several discovery disputes.  (*See, e.g.*, Nov. 28, 2022 Min. Entry & Order; Jan. 13, 2023 Min. Entry & Order; Apr. 28, 2023 Order.)

On April 18, 2024, Rashid notified the Court that he had filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York, prompting the Court to stay this action only as to him.  (*See* ECF No. 58; Apr. 24, 2024 Order.)  The remaining parties completed discovery on June 28, 2024.  (*See* ECF No. 60; July 2, 2024 Order.)

In a letter dated August 7, 2024, Defendants stated that they were not prepared to engage in trial-related proceedings or dispositive motion practice, citing Ghost Fitness's "imminent dissolution" and Rashid's bankruptcy action.  (ECF No. 61.).  On August 15, 2024, Plaintiff stated its intention to move for default judgment.  (*See* ECF No. 62 at 1.)  At the Court's direction, the Clerk of Court entered default against Ghost Fitness on August 19, 2024.  (*See* Aug. 16, 2024 Order; ECF No. 63.)  On September 16, 2024, the Bankruptcy Court

granted Rashid a discharge pursuant to 11 U.S.C. § 727.  *See* Order Discharging Debtor & Final Decree, *In re Rashid*, No. 24-41343 (Bankr. E.D.N.Y. Sept. 16, 2024), ECF No. 18.[2]

Plaintiff moved for default judgment against Ghost Fitness on September 17, 2024. (*See* Pl.'s Mot., ECF No. 67.)  Judge Merle referred the motion for report and recommendation. (Sept. 19, 2024 Order.)  All parties appeared for a motion hearing before the undersigned on May 20, 2025.  (*See* May 20, 2025 Min. Entry; Tr., ECF No. 78.)  Ghost Fitness declined to defend against Plaintiff's claims or to oppose the pending default judgment motion.  (Tr., ECF No. 78 at 6:9–9:5, 23:18–25:12.)  Following the hearing, Plaintiff submitted supplemental briefing.  (ECF No. 79.)

## II.    STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to

---

[2] The Court may take judicial notice of docket sheets and public filings in bankruptcy court cases. *See Mangifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice[.]"); *In re F.C.C.*, 208 F.3d 137, 138 (2d Cir. 2000) (taking judicial notice of bankruptcy court docket).

"(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default judgment motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.    JURISDICTION & VENUE

### A.    Subject Matter Jurisdiction

The Court has federal question jurisdiction over Plaintiff's Lanham Act claims and supplemental jurisdiction over the remaining claims.  *See* 28 U.S.C. §§ 1331, 1338, 1367.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]"  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Ghost Fitness. *First*, "[w]hen the plaintiff files a waiver, proof of service is not required and [the Rules] apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4). Plaintiff filed a waiver of service dated July 12, 2021 and signed by Aasheesh Shravah, Ghost Fitness's counsel of record. (*See* ECF No. 9.) This waiver is sufficient to satisfy the service requirements. *See Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Tr., Lab. Mgmt. Coop. & Scholarship Funds v. Creative Installations, Inc.*, No. 10-CV-582 (ADS)(GRB), 2012 WL 4482815, at *3 (E.D.N.Y. Aug. 31, 2012) (accepting similar waiver of process), *adopted by* 2012 WL 4482855 (E.D.N.Y. Sept. 27, 2012).

*Second*, Ghost Fitness "'answered the complaint, participated in discovery . . . and never moved for dismissal pursuant to [Rule] 12(b)(2), thereby waiving any argument regarding the Court's personal jurisdiction.'" *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) (quoting *Perez v. 50 Food Corp.*, No. 17-CV-7837, 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020)), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023); *see also* Fed. R. Civ. P. 12(h)(1) (providing that a party waives objections to personal jurisdiction if not asserted by motion).

*Third*, the Court has general jurisdiction over Ghost Fitness because it is a limited liability company formed under the laws of New York. *See Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 237 (S.D.N.Y. 2023) (citing N.Y. C.P.L.R. § 301); *see also Rouse v. Broadway & Cooper LLC*, 753 F. Supp. 3d 153, 167 (E.D.N.Y. 2024) (finding that the court had general jurisdiction over defendant because it was a New York limited liability company).

"Since jurisdiction is proper for [this Defendant] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Ghost Fitness therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.    Venue

"[A] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Similar to personal jurisdiction, however, any objection to venue is waived if not asserted in a defendant's responsive pleading or in a Rule 12 motion.  *See* Fed. R. Civ. P. 12(h)(1); *see also Du v. Party Perfect Rentals LLC*, 724 F. Supp. 3d 68, 71 n.2 (E.D.N.Y. 2024) ("[B]y not objecting to venue in the Eastern District of New York, the parties have waived any objections to the appropriateness of venue in this district.").  Here, Defendants concede that venue is proper in this district.  (*See* Am. Answer, ECF No. 15 ¶ 11.)  Accordingly, venue in this district is appropriate.

### IV.    **DEFAULT JUDGMENT FACTORS**

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended*

by Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

### A.    Willfulness

As for the first factor of willfulness, "[e]ntry of default is appropriate . . . where a defendant 'affirmatively signals to the district court its intention to cease participating in its own defense, even after the defendant was clearly warned that a default would result[.]'" *S & K Commack Dev., LLC v. Hasn Dry Cleaners, Inc.*, No. 13-CV-5297 (SJF)(ARL), 2015 WL 4139357, at *7 (E.D.N.Y. July 9, 2015) (alterations omitted) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 130 (2d Cir. 2011)); *see also Esquivel*, 2023 WL 6338666, at *4 ("Because Defendants abandoned the litigation, the Court cannot determine whether they have meritorious defenses, which warrants default against them.").

Here, Ghost Fitness repeatedly demonstrated a clear intention to abandon its defense of this action. On August 7, 2024, Defendants informed Plaintiff and the Court that "due to the pendency of the current bankruptcy proceeding for [Rashid], and due to the imminent dissolution of the sole remaining defendant [Ghost Fitness], [Defendants] [are] not able to participate in trial-related proceedings or any dispositive motion practice." (ECF No. 61.) At the May 20, 2025 motion hearing, both defense counsel and Rashid, Ghost Fitness's CEO, confirmed that Ghost Fitness did not intend to further respond to Plaintiff's claims or to contest

the instant motion, even after the Court explained that a default judgment against Ghost Fitness may result. (*See* May 20, 2025 Min. Entry; Tr. 6:9–9:5, 23:18–25:12.) Accordingly, the Court finds that Ghost Fitness has willfully abandoned its defenses, and this factor thus supports a default judgment.

### B.    Meritorious Defenses

With respect to the second factor, "a defense may be meritorious if it is more than a conclusory denial and if it is articulated with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099 at *5 (E.D.N.Y. Mar. 24, 2022) (cleaned up). "However, a defendant must 'present evidence of facts that if proven at trial, would constitute a complete defense.'" *Courchevel 1850*, 784 F. Supp. 2d at 124 (quoting *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)).

Defendants asserted several viable defenses early in this action. For example, in their amended Answer, Defendants argue that Plaintiff failed to state a claim upon which relief can be granted, because Trademarks 2, 3, 4, and 6 "relate to a stylized design of the word 'GHOST' that includes an image of a ghost that is not used by nor was ever used by Defendants, and the goods/services listed by Plaintiff for these trademark registrations are not provided nor sold by Defendant [*sic*]." (Am. Answer, ECF No. 15 at 10.) Defendants also claim that "Plaintiff's claims are barred, in whole or in part, because Plaintiff has not sustained any damages for which the Defendants are responsible." (*Id.*) Additionally, in their premotion conference request, Defendants asserted that Plaintiff failed to state a claim for deceptive acts and practices, in violation of N.Y.G.B.L. § 349 (Count VI), because: (1) the statute "is a consumer

protection device directed at wrongs against the consuming public, not disputes between competitors"; (2) a Section 349 claim based on trademark infringement "involve[s] public harm that is too attenuated and insubstantial to satisfy the statutes' consumer protection purposes"; and (3) Plaintiff's allegations are "speculative and therefore [do] not meet the pleading requirements mandated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)[.]" (ECF No. 17 at 1–2 (internal quotation marks omitted).)  Each of these defenses, if advanced and proven, would have eliminated most of Plaintiff's claims or otherwise substantially limited damages.  Instead, Ghost Fitness failed to reassert these defenses later in the case.  Although the Court directed Defendants to state whether a briefing schedule for its anticipated motion to dismiss was warranted (*see* Jan. 7, 2022 Min. Entry & Order), Defendants did not so state. Ghost Fitness also did not adduce facts in discovery to prove these defenses or attempt to otherwise present facts to the Court to support its defenses. *See Courchevel 1850*, 784 F. Supp. 2d at 124.  Because Ghost Fitness abandoned the litigation and the opportunity to present evidence, the Court cannot determine on the record whether Ghost Fitness's affirmative defenses are meritorious.  This factor therefore supports entry of default.

## C.    Prejudice to Plaintiff

Finally, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court."  *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).  In other words, because Ghost Fitness abandoned the case, "[w]ithout the entry of a default judgment, Plaintiff [] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL

312149, at *4 (E.D.N.Y. Jan. 3, 2019) (first alteration in original) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)).  Therefore, this factor supports default.

Because default judgment is permissible, the Court will examine whether Plaintiff's allegations sufficiently establish liability.  *Pub. Adm'r of Cnty. of Nassau v. Cnty. of Nassau*, No. 17-CV-05623 (LGD), 2024 WL 1244844, at *5 (E.D.N.Y. Mar. 21, 2024).

## V.   LIABILITY

Plaintiff asserts eight causes of action: trademark infringement under the Lanham Act (Count I); false designation of origin in violation of the Lanham Act (Count II); common law trademark infringement (Count III); trademark infringement in violation of state common law (Count IV); common law unfair competition (Count V); deceptive acts and practices in violation of N.Y.G.B.L. § 349 (Count VI); injury to business reputation and mark dilution in violation of N.Y.G.B.L. § 360-*l* (Count VII); and use of a name with intent to deceive in violation of N.Y.G.B.L. § 133 (Count VIII).  (*See generally* Compl., ECF No. 1 ¶¶ 50–102.)

### A.   Lanham Act Trademark Infringement (Count I)

Section 32 of the Lanham Act trademark provision states, in relevant part:

> Any person who [] without the consent of the registrant . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . shall be liable in a civil action by the registrant[.]

15 U.S.C. § 1114(1).  To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove that: (1) it owns a valid, protectable trademark and (2) the defendant's use of the trademark creates a likelihood of consumer confusion.  *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hosp.*

*Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)).  The Lanham Act is a strict liability statute and, as such, does not require proof of intent or knowledge to show liability.  *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016).

### 1. Ownership of a Valid, Protectable Trademark

A certificate of registration of a mark with the United States Patent and Trademark Office ("USPTO") is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 U.S.C. § 1057(b).  "However, 'this statutory presumption may be overcome' if the allegedly infringing party demonstrates by a preponderance of the evidence that 'the mark is ineligible for protection.'"  *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 552 (E.D.N.Y. 2019) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 n.10 (2d Cir. 2012) and citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("[W]hen a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of mark's protectibility [*sic*] by a preponderance of the evidence.")).  Here, Plaintiff submitted copies of registrations issued by the USPTO for each of the Ghost Marks registered between 2016 and 2021.  (Compl. Ex. A, ECF No. 1-4 at 2–7.)  Therefore, Plaintiff has sufficiently established the first element of trademark infringement.

### 2. Likelihood of Consumer Confusion

When determining whether a defendant's use of a mark is likely to cause confusion, courts consider the following factors:

(1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

*Tiffany & Co.*, 971 F.3d at 84–85 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (cleaned up).  Plaintiff has sufficiently established likelihood of consumer confusion because most of the *Polaroid* factors weigh in Plaintiff's favor.

First, the strength of the Ghost Marks weigh in favor of Plaintiff.  This factor includes two different concepts: (1) "inherent strength" or "inherent distinctiveness," measured by the mark's "distinctiveness or the degree to which the mark indicates the source or origin of the product"; and (2) "fame of the mark," or "the extent to which prominent use of the commerce has resulted in a high degree of consumer recognition." *Campbell v. Huertas*, No. 20-CV-3471 (KAM), 2023 WL 1967512, at *5 (E.D.N.Y. Feb. 13, 2023) (cleaned up) (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992) and citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003)).  The Ghost Marks are presumed to be distinctive and afforded the most protection because Plaintiff registered them.[3]

---

[3] Ghost Fitness registered a trademark for "GHOST" with the USPTO on March 9, 2021, more than five years after Plaintiff registered Trademark 1, and surrendered that registration on September 13, 2024.  (*See* Emerson Decl., ECF No. 69 ¶¶ 3–4; *id.* Ex. B, ECF No. 69-2; Compl. Ex. A., ECF No. 1-4 at 2.)  The USPTO cancelled the registration on February 26, 2025.  *See* GHOST, U.S. Trademark Registration No. 6289743 (available at

*Id.* Moreover, Plaintiff alleges that it has "[s]ince 2015, invested substantially in promoting the GHOST Marks and the Ghost Products" through its website, paid advertising, social media, partnerships with influencers and brand ambassadors, and events held at gyms and other fitness facilities throughout the United States, thereby creating a brand "inextricably linked to fitness, exercise, nutrition, and an overall active lifestyle." (Compl., ECF No. 1 ¶¶ 21–22.) As a result of its efforts, Plaintiff boasts hundreds of thousands of followers on multiple social media platforms and marks with substantial goodwill value that "distinguish [Plaintiff's] goods and services from the goods and services of others." (*Id.* ¶ 26.) Plaintiff contends that the Ghost Marks' goodwill "is invaluable given the huge crossover between sports nutrition brands and gyms" and the fact that "monies derived from the sale of products (as opposed to gym services) can represent a substantial portion of a gym's total revenue." (*Id.* ¶ 27.) Thus, the first factor, the strength of the Ghost Marks, weighs in Plaintiff's favor.

Second, the similarity between the Ghost Marks and Ghost Fitness's imitative use strongly supports Plaintiff. Trademark 1 and Trademark 5 consist of "Ghost" and "Ghost Legend," respectively, and "consist of standard characters without claim to any particular font, style, size, or color." (*See* Compl. Ex. A, ECF No. 1-4 at 2, 6.) Trademarks 2–4 consist of the word "GHOST" written in graffiti-style capital letters with an adjacent cartoon ghost. (*See id.* at 3–5.) Trademark 6 is identical to Trademarks 2–4, with the addition of the word

---

https://tsdr.uspto.gov/#caseNumber=87755806&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch [https://perma.cc/6C2N-G6NU]) (last accessed Aug. 27, 2025). The Court may take judicial notice of trademark registrations and cancellations in the USPTO registry. *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (citing *Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 n.2 (8th Cir.1996)).

"LIFESTYLE" below "GHOST." (*Compare id. with id.* at 7.) The Infringing Mark also consists of the word "GHOST" in capital letters "without claim to any particular font style, size or color." (Emerson Decl., Ex. B, ECF No. 69-2.) In short, the Infringing Mark—used within the Facility's tradename "Ghost Fitness"—is virtually identical to Trademark 1 and is only distinguished by its use of all-capital letters. (*Compare id. with* Compl. Ex. A, ECF No. 1-4 at 2.) The Infringing Mark is also highly similar to Trademarks 2–4 which contain the anchoring word "GHOST" in capitalized and stylized letters. (*Compare* Emerson Decl., Ex. B, ECF No. 69-2 *with* Compl. Ex. A, ECF No. 1-4 at 3–5.) Although the Facility was branded as "Ghost Fitness," a defendant "cannot avoid liability merely by adding the descriptive word." *MaidPro Franchise, LLC v. City Maid Pro, Inc.*, No. 23-CV-9172 (VM), 2024 WL 3219888, at *3 (S.D.N.Y. June 27, 2024) (citing *New York City Triathlon, LLC v. NYC Triathlon Club*, 704 F. Supp. 2d 305, 317 (S.D.N.Y. 2010)); *see also Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-CV-9308 (MKV), 2022 WL 956223, at *9 (S.D.N.Y. Mar. 30, 2022) (finding that junior mark holder's addition of the words "power" or the initials "DP" or "AF" before or after "Diesel" did not make the mark sufficiently dissimilar from the mark "DIESEL" to avoid a likelihood of confusion). Therefore, the degree of similarity factor weighs strongly in Plaintiff's favor.

The third factor, the competitive proximity of the parties' products, also weighs in favor of Plaintiff. The proximity inquiry concerns "'whether and to what extent the two products compete with each other' and 'the nature of the products themselves and the structure of the relevant market.'" *Vans, Inc. v. MSCHF Prod. Studio, Inc*., 88 F.4th 125, 140 (2d Cir. 2023) (quoting *Morningside Grp. Ltd. v. Morningside Cap. Grp.*, L.L.C., 182 F.3d 133, 140 (2d Cir. 1999), which in turn quotes *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir.

1996)). Relevant considerations include "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Id.* (quoting *Cadbury Beverages*, 73 F.3d at 480). "Thus, the closer the secondary user's goods or services are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." *New York City Triathlon*, 704 F. Supp. 2d at 317 (cleaned up) (quoting *Virgin Enters.*, 335 F.3d at 150 (alterations and internal quotation marks omitted)). Here, Ghost Fitness offered or intended to offer personal training and fitness services, nutrition services, a mobile software application, dietary supplements, and other sports nutrition products using the Ghost Marks. (*See* Compl., ECF No. 1 ¶¶ 37–40.) These products and services are in close competitive proximity to Plaintiff's, who—directly and through its partners—offers "a broad array of sports nutrition products, dietary and nutritional supplements, [] beverages . . . and other merchandise featuring the GHOST Marks." (*Id.* ¶ 15.) Accordingly, the third factor weighs in Plaintiff's favor.

Fourth, the likelihood that Plaintiff will "bridge the gap" and offer a product like Ghost Fitness's, is neutral. "'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 169 (S.D.N.Y. 2022) (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005)). However, this factor is irrelevant where, as here, Plaintiff and Ghost Fitness's products are already "competitively proximate." *Vans*, 88 F.4th at 140.

Fifth, "[a]ctual confusion need not be shown to prevail under the Lanham Act, because actual confusion is very difficult to prove, and the Act requires only a *likelihood* of confusion

as to source." *Campbell*, 2023 WL 1967512, at *6 (cleaned up).  As discussed in the analysis of the second and third factors, *supra*, consumers would likely be actually confused as to the source of Ghost Fitness's products and services because it used the Ghost Marks.  (*See, e.g.*, Lourenco Decl, ECF No. 70 ¶ 17 ("There have been multiple instances where individuals reached out to Plaintiff inquiring about its connection to Defendants.").)  This factor thus weighs in favor of Plaintiff.

Sixth, a defaulting defendant demonstrates bad faith when it "continu[es] to engage in infringing conduct after receiving a demand to stop engaging in such conduct." *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-CV-2790 (FB)(VMS), 2022 WL 771397 at *5 (E.D.N.Y. Feb. 10, 2022)*, adopted by* 2022 WL 768302 (E.D.N.Y. Mar. 14, 2022).  Plaintiff alleges that Ghost Fitness continued to operate under the Ghost Marks even after Plaintiff "contacted Defendants to advise them of Plaintiff's trademark priority, including its federally-registered trademark rights."  (*See* Compl., ECF No. 1 ¶¶ 34–35.)  Accordingly, this factor weighs in favor of Plaintiff.

The remaining factors are neutral.  The quality of the product, the seventh factor, is neutral because while Plaintiff alleges that Ghost Fitness's products "may not meet [Plaintiff's] exacting health, safety and efficacy standards," Plaintiff also appears to cite Rashid's personal bankruptcy as evidence that Ghost Fitness's products are low-quality.  (*See* Compl., ECF No. 1 ¶ 89; Mem., ECF No. 72 at 21.)  The eighth and last factor concerns the sophistication of consumers.  "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in . . . trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol–Myers Squibb*, 973 F.2d at 1046.  Plaintiff states that its customers come "from every economic strata" and that "the price range of

GHOST-branded products also varies, and includes some inexpensive affordable products." (Lourenco Decl., ECF No. 70 ¶ 16; *see* Mem., ECF No. 72 at 22.)  Based on these facts, the Court concludes that a substantial number of Plaintiff's customers would confuse its products with those of Ghost Fitness based on the latter's use of the Ghost Marks.  Accordingly, the eighth factor weighs slightly in favor of Plaintiff.

Given the totality of the factors and the likelihood of consumer confusion, the Court respectfully recommends that Ghost Fitness should be liable for Lanham Act trademark infringement as alleged in Count I.

### B.    False Designation of Origin (Count II)

Section 43(a) of the Lanham Act provides that any person who "uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval" of the person's products shall be liable.  28 U.S.C. § 1125(a)(1)(A).  "The standards for false designation of origin claims under Section 43(a) of the Lanham Act are the same as for trademark infringement claims under Section 32."  *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (cleaned up) (quoting *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002)); *see also Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129–30 (2d Cir. 2004) (analyzing plaintiff's claims of imitation of a registered mark, 15 U.S.C. § 1114, and false designation of origin, *id.* § 1125(a), under the same legal standard).  Because Plaintiff has established trademark infringement for the reasons discussed (*see* § V.A., *supra*), Plaintiff has also demonstrated Ghost Fitness's liability for false designation of origin under the

Lanham Act.  As such, the Court respectfully recommends granting Plaintiff's motion as to Count II.

### C.    Common Law Trademark Infringement (Counts III & IV)

Plaintiff alleges violations of "common law trademark infringement" (Count III) as well as "trademark infringement in violation of state common law" (Count IV).  (*See* Compl., ECF No. 1 ¶¶ 65–76.)  The only common law relevant to Plaintiff's trademark infringement allegations is New York common law, because "[t]here is no federal common law of trademark infringement."  *Ampion Corp. v. AXXA Tech, Inc.*, No. 18-CV-660, 2019 WL 2119621, at *4 (W.D.N.Y. May 15, 2019); *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law.").  Accordingly, to the extent that Count III alleges a violation of federal common law, the Court respectfully recommends that default judgment should be denied for this claim.  *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015), *as amended* (Dec. 17, 2015) ("[W]e will not reinstate the plaintiffs' federal common-law causes of action because we discern no basis for such nebulous, non-statutory claims under federal law."), *aff'd sub nom. Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018). To the extent Count III merely restates Count IV's claim for trademark infringement under New York common law, the Court respectfully recommends that default judgment should be denied and this claim should be dismissed as duplicative.  *See Gov't Emps. Ins. Co. v. ALP Supply, Inc.*, No. 22-CV-79 (LDH)(MMH), 2023 WL 5846680, at *7 (E.D.N.Y. Sept. 11, 2023) (denying default judgment for unjust enrichment claim as duplicative of common law fraud claim where both were based on the same transactions and conduct), *adopted by* Order Adopting R. & R., No. 22-CV-79 (LDH)(MMH) (E.D.N.Y. Sept., 28, 2023).

As for Count IV, "[t]o prevail on a common law claim of trademark infringement, a plaintiff need only present evidence sufficient to establish a violation of section 32(1) [15 U.S.C. § 1114(1)] of the Lanham Act." *Sola Franchise Corp.*, 2015 WL 1299259, at *13. Thus, for the same reasons that the Court found trademark infringement under the Lanham Act (*see* § V.A., *supra*), the Court finds that Plaintiff has established common law trademark infringement. Accordingly, the Court respectfully recommends Ghost Fitness should be liable for common law trademark infringement as alleged in Count IV.

### D.    Unfair Competition (Count V)

"To establish a claim for common law unfair competition, a plaintiff must state a Lanham Act claim coupled with a showing of a defendant's bad faith or intent." *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 424 (S.D.N.Y. 2018) (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997)); *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50–51 (2d Cir. 2019) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith.") (cleaned up).

Here, Plaintiff has met the standard for a Lanham Act unfair competition claim for the same reasons it satisfied the standard for trademark infringement (§ V.A., *supra*). *See Spin Master*, 325 F. Supp. 3d at 423–24. Additionally, Plaintiff has satisfied the New York law unfair competition standard because Ghost Fitness's use of the Ghost Mark includes a presumption of bad faith and Defendants' default supports this inference of bad faith. *See Sola Franchise Corp.*, 2015 WL 1299259, at *11, *14. Accordingly, the Court respectfully recommends Ghost Fitness should be liable for common law unfair competition as claimed in Count V.

E.      **State Law Claims**

1.      **Deceptive Acts & Practices (Count VI)**

New York law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"  N.Y. Gen. Bus. Law § 349(a).  "To make out a *prima facie* case under [N.Y.G.B.L. §] 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 278 (E.D.N.Y. 2021) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).   "The majority view in this Circuit is that trademark infringement claims are not cognizable under N.Y.G.B.L. § 349 unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement." *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-02441 (HG) (TAM), 2025 WL 1031062, at *8 (E.D.N.Y. Apr. 7, 2025) (cleaned up) (quoting *Juul Labs, Inc. v. EZ Deli Grocery Corp I*, No. 21-CV-2615 (MKB)(VMS), 2022 WL 1085406, at *7 (E.D.N.Y. Feb. 10, 2022) (collecting cases)), *adopted by* 2022 WL 819152 (E.D.N.Y. Mar. 18, 2022)); *see also Aero AG Holdings, LLC v. Huggoes Fashion LLC*, No. 21-CV-9499 (VEC)(SLC), 2022 WL 6244439, at *16 (S.D.N.Y. July 5, 2022) ("[P]laintiff has merely described the type of injury that is generally associated with violations of intellectual property, which courts in this district have found that plaintiffs cannot state a claim under § 349.") (cleaned up), *adopted as modified by* 2022 WL 4463896 (S.D.N.Y. Sept. 26, 2022).

Here, Plaintiff alleges that "Defendants' use of the mark GHOST is materially misleading to consumers and to the public" which may cause consumers to be "misled into purchasing products and services, including nutritional supplements intended to be ingested,

that are of a lesser quality." (Compl., ECF No. 1 ¶¶ 87, 89.)  "But 'this alleged injury—confusion and deception of the consuming public—is not distinct from the very harm that trademark laws generally seek to redress and thus is not over and above ordinary trademark infringement.'"  *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, No. 19-CV-2009 (ENV)(CLP), 2022 WL 2704506, at *11 (E.D.N.Y. July 12, 2022) (quoting *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012)).  Accordingly, the Court respectfully recommends denying Plaintiff's motion as to Count VI.

### 2.    Injury to Business Reputation & Mark Dilution (Count VII)

New York Law provides for "injunctive relief" when there is a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name."  N.Y. Gen. Bus. Law § 360-*l*.  To establish dilution, Plaintiff must demonstrate "(1) ownership of a distinctive mark, and (2) a likelihood of dilution."  *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *17 (S.D.N.Y. Feb. 16, 2023) (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996)); *see also Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 734 (E.D.N.Y. 2018) (citing *Deere & Co. v. MTD Prod., Inc.*, 41 F.3d 39, 42 (2d Cir. 1994)).

Distinctiveness, in the context of a section 360-*l* claim, "is measured by the strength of a mark for infringement purposes,"  *Shakuff LLC v. Shakuff Custom Glass Lighting Inc.*, No. 23-CV-123 (EK)(JRC), 2025 WL 977725, at *8 (E.D.N.Y. Mar. 7, 2025) (cleaned up), *adopted by* 2025 WL 974642 (E.D.N.Y. Apr. 1, 2025), and "[t]he statute protects only extremely strong marks."  *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-CV-3314, 2018 WL 2084168, at *7 (S.D.N.Y. May 1, 2018) (cleaned up).  Here, the Ghost Marks are used on products sold throughout the world, are

distinctive and non-functional, and are the subject of considerable marketing over several years. (*See* Compl., ECF No. 1 ¶¶ 19–26.) Accordingly, "[f]or the same reasons Plaintiff has established [Ghost Fitness's] liability pursuant to the Lanham Act, Plaintiff has established that its mark is inherently distinctive" for purposes of section 360-*l*. *Mintable Pte. Ltd. v. Mintology Inc.*, No. 23-CV-8215 (LJL), 2024 WL 3454825, at *10 (S.D.N.Y. July 18, 2024).

New York law recognizes two theories of dilution: blurring and tarnishment. *See Kohler*, 422 F. Supp. 3d at 734–35 (citing Starbucks, 588 F.3d at 114 (2d Cir. 2009)). Plaintiff relies on the former. (*See* Mem., ECF No. 72 at 24.) "Traditionally, the likelihood of blurring has been governed by a six-factor test: (1) similarity of the marks, (2) similarity of the products covered, (3) sophistication of the consumers, (4) predatory intent, (5) renown of the senior mark, [and] (6) renown of the junior mark." *Mintable*, 2024 WL 3454825, at *10 (quoting *The Sports Auth.*, 89 F.3d at 966). The first five factors of the blurring test are similar to the *Polaroid* factors discussed above (*see* § V.A.2., *supra*), so the Court need only consider the last factor—the renown of the junior mark. *See id.*; *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 460 (S.D.N.Y. 2017) (concluding that the Court need only analyze the renown of the junior mark having already analyzed trademark infringement under the *Polaroid* factors). Here, while Ghost Fitness marketed the Facility using the Infringing Mark, ultimately it launched a single fitness facility during the COVID-19 pandemic, which has since ceased operations. (*See* Compl., ECF No. 1 ¶ 31; ECF No. 59.) Accordingly, the Court concludes that Ghost Fitness's mark is of insignificant renown relative to the Ghost Marks and—considering the *Polaroid* factors analyzed above—finds that Plaintiff has established a likelihood of dilution. The Court respectfully recommends that Ghost Fitness should be liable for a N.Y.G.B.L. § 360-*l* violation.

### 3.    Use of a Name with Intent to Deceive (Count VIII)

New York Law prohibits businesses from using trade names or symbols "which may deceive or mislead the public."  N.Y. Gen. Bus. Law § 133.

"To prevail on a Section 133 claim, 'a plaintiff must demonstrate (1) intent to deceive the public, and (2) the assumption, adoption, or use of a corporate, assumed, or trade name of another." *Esposito v. Info. Tech. Corp. of the Tri-States*, No. 19-CV-2025 (VB), 2022 WL 1155917, at *6 (S.D.N.Y. Apr. 19, 2022) (quoting *Caliko, SA v. Finn & Emma, LLC*, 2022 WL 596072, at *13 (S.D.N.Y. Feb. 28, 2022)).  Here, Plaintiff alleges that Ghost Fitness used the Infringing Mark "to trade upon the goodwill and substantial recognition associated with Plaintiff's GHOST Marks and . . . to cause confusion and mistake among consumers as to the source of Defendants' goods and services."  (Compl., ECF No. 1 ¶ 43.)  Accordingly, the Court recommends that Ghost Fitness should be liable for violating N.Y.G.B.L. § 133.

## VI.    **RELIEF**

As Defendants' liability has been established, the Court turns to evaluate damages and other forms of relief.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Bricklayers*, 779 F.3d at 189 (cleaned up).  "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

Plaintiff requests: (1) $5,051,013.00 in monetary damages, including treble damages on Ghost Fitness's $1,683,671.00 in sales from January 2018 to December 2023, (2) a permanent injunction; (3) $500,000.00 in attorneys' fees, (4) $402.00 in costs, (5) pre-judgment interest, and (6) post-judgment interest. (*See* Mem., ECF No. 72 at 26–31; Proposed Judgmt., ECF No. 73 ¶¶ 13–18.)[4]

## A.    Actual Damages

A plaintiff who has successfully established a trademark violation "shall be entitled . . . to recover . . . defendant's profits . . . and the costs of the action." 15 U.S.C. § 1117(a). In assessing a defendant's profits "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* "To obtain profits as measured by the actual sales of the infringer, [a plaintiff] must submit evidence about the actual sales of [the infringing defendant]." *7-Eleven, Inc. v. Z-Eleven Convenience Store Inc.*, No. 16-CV-4116 (RRM)(SJB), 2018 WL 1521859, at *4 (E.D.N.Y. Jan. 17, 2018), *adopted by* 2018 WL 1466799 (E.D.N.Y. Mar. 26, 2018). "To ascertain whether 'on the whole, the equities weigh in favor of an accounting' of the defendant's profits, courts consider '(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) [the] plaintiff's laches; and (5) [the] plaintiff's unclean hands.'" *Aime Leon Dore, Inc. v. TASTR. GmbH*, No. 20-CV-934 (MKB), 2021 WL 6797294, at *13 (E.D.N.Y. Jan. 8, 2021) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532,

___

[4] Plaintiff withdrew its request for an order cancelling Ghost Fitness's USPTO trademark registration for "GHOST" in light of the USPTO's cancellation. (*See* Tr. 10:17–11:1 (requesting to strike paragraph 10 from the Proposed Judgment); *see also* n.3, *supra*.

1540 (2d Cir. 1992), *abrogated on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212 (2020)).

Here, Plaintiff seeks Ghost Fitness's sales revenue from January 2018 through December 2023.  (*See* Mem., ECF No. 72 at 26–27.)  Plaintiff supports this request with an expert report by John G. Plumpe, an economics consultant ("the Plumpe Report").  (*See generally* Plumpe Rep., ECF No. 76-1 (filed under seal).)  The Plumpe Report is based on Plumpe's review of Ghost Fitness's profit and loss statements from 2018 through 2023 and other documents produced in discovery.  (*Id.* at 5–6.)  Plumpe conservatively calculated that Ghost Fitness generated $1,683,671.00 during the relevant period selling products and services with the Infringing Mark and incurred $24,861.00 in costs directly related to the sale of these products and services, yielding $1,658,810.00 in gross profits.  (*Id.* at 16–17.)

The Court finds that Plaintiff is entitled to an award of Ghost Fitness's sales revenue because its expert report establishes to a high degree of certainty that Ghost Fitness benefitted from infringing on the Ghost Marks and "the record does not suggest impropriety on Plaintiff's part."  *Aime Leon Dore*, 2021 WL 6797294, at *13.  An award of revenue, as opposed to profits, is appropriate because "[b]y defaulting in the action, defendant has waived the right to assert any costs or deductions from the revenue that it received."  *J.T. Kalmar GmbH v. KLS Lighting Co.*, No. 17-CV-7505 (BMC), 2019 WL 3780091, at *3 (E.D.N.Y. Aug. 12, 2019) (citing 15 U.S.C. § 1117(a)); *see also FoxMind Canada Enters. Ltd. v. YoYo Lip Gloss, Inc.*, No. 22-CV-5349 (HG)(MMH), 2025 WL 819867, at *9 (E.D.N.Y. Mar. 15, 2025) ("The Court also declines to estimate any costs or deductions from [the plaintiff's] proffered sales data, as that is [the defendant's] burden in defending against [the plaintiff's] damages claim."), *adopted by* Order Adopting R. & R., *FoxMind Canada Enters. Ltd. v. YoYo Lip Gloss, Inc.*, No. 22-

CV-5349 (HG)(MMH) (Mar. 31, 2025); *Telebrands Corp. v. Shenzhen Yitai Tech. Co.*, No. 22-CV-904 (LGS)(JLC), 2023 WL 19534, at *3 (S.D.N.Y. Jan. 3, 2023) ("Once the plaintiff has proved the amount of defendant's infringing sales, it is entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it.") (cleaned up), *adopted by* 2023 WL 2403753 (S.D.N.Y. Mar. 8, 2023).

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$1,683,671.00** in actual damages for trademark infringement.

### B.     Treble Damages

Plaintiff requests that the Court triple its award of actual damages.  (*See* Mem., ECF No. 72 at 27–28.)  The Court, "in its discretion," may award up to three times Plaintiff's actual damages where it finds that "the amount of the recovery based on profits alone is either inadequate or excessive." 15 U.S.C. § 1117(a).  The Court must treble damages upon a finding of willfulness, absent extenuating circumstances.  *Id.* § 1117(b).  Here, the Court finds that treble damages are warranted because, as discussed above (*see* § IV.A., *supra*), Ghost Fitness willfully infringed on the Ghost Marks by affirmatively abandoning any defenses against Plaintiff's claims.  *See Aime Leon Dore*, 2021 WL 6797294, at *14 (trebling damages where "Defendants willfully infringed" on the plaintiff's marks by defaulting).  Accordingly, the Court respectfully recommends Plaintiff's actual damages of $1,683,671.00 should be tripled, for a total actual damages award of **$5,051,013.00**.

### C.     Permanent Injunction

"'A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'"  *Grp. One Ltd. v. GTE GmbH*,

625 F. Supp. 3d 28, 70 (E.D.N.Y. 2022) (quoting *Kaneka Corp. v. Purestar Chem. Enter.*, No. 16-CV-4861 (MKB)(SIL), 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018)).  Under the Lanham Act, a district court has authority to grant injunctive relief to prevent further violations of a plaintiff's trademark.  15 U.S.C. § 1116(a); *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 51 (S.D.N.Y. 2022).  Plaintiff has already established liability under the Lanham Act for Ghost Fitness's infringement of the Ghost Marks.  (*See* § V.A., *supra*.)  Thus, the Court may enter a permanent injunction to prevent future violations if Plaintiff has shown: "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Plaintiff has demonstrated all four factors.  *First*, "[u]nder the remedial provisions of the Lanham Act, a plaintiff who has established infringement is entitled to a rebuttable presumption of irreparable harm." *Kelly Toys*, 606 F. Supp. 3d at 52; *see* 15 U.S.C. § 1116(a).  In this case, Plaintiff alleges not only economic loss, but also "irreparable injury to the public recognition and goodwill associated with Plaintiff's GHOST Marks."  (Compl., ECF No. 1 ¶ 47.)  *Second*, "a 'plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue' its infringement." *Karmagreen, LLC v. Super Chill CBD Prods.*, No. 23-CV-6073 (LJL), 2024 WL 1348783, at *8 (S.D.N.Y. Mar. 29, 2024) (quoting *Pearson Educ., Inc. v. Vergara*, No. 09-CV-6832 (JGK)(KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010)).  Although Ghost Fitness "is in the process of dissolution" and "has ceased all operations" (*see* ECF No. 59), there is no evidence that the company has been

dissolved as of the date of this Report and Recommendation.[5]  Ghost Fitness "could simply resume operations directly or indirectly," and therefore "has not shown that it is 'absolutely clear that its wrongful conduct will not recur.'"  *Coty*, 277 F. Supp. 3d at 465 (cleaned up) (quoting *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-0442 (DLC), 2016 WL 815205, at *14 (S.D.N.Y. Feb. 29, 2016)).  *Third*, the balance of hardships leans towards Plaintiff, who would lose sales and goodwill if Ghost Fitness resumed infringing on the Ghost Marks.  *See Karmagreen*, 2024 WL 1348783, at *8 ("It is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." (quoting *WPIX, I8nc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012)).  Finally, "the public interest is served by a permanent injunction, as the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."  *Kelly Toys*, 606 F. Supp. 3d at 53 (cleaned up).  Accordingly, Plaintiff is entitled to an injunction, and the Court respectfully recommends entry of permanent injunction enjoining Ghost Fitness from continuing to infringe on the Ghost Marks as set forth in the proposed default judgment order.

### D.    Attorneys' Fees

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  *See* 15 U.S.C. § 1117(a).  An "exceptional case . . . stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

---

[5] The New York Secretary of State's website lists Ghost Fitness as "active."  *See "*Corporation and Business Entity Database," N.Y. Dep't of State Div. of Corps., https://apps.dos.ny.gov/publicInquiry/#search (enter "Ghost Fitness" and select "Limited Liability Company") [https://perma.cc/4AM7-VT3T] (last visited Aug. 28, 2025).

was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (applying the "exceptional case" standard to identically worded attorneys' fees provision in Patent Act, 35 U.S.C. § 285); *see Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018) (holding that *Octane Fitness* "exceptional case" standard for attorneys' fees under Patent Act also applies to Lanham Act).

To determine whether a case is "exceptional," courts must "engage in a case-by-case exercise of their discretion, considering the totality of the circumstances." *4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202, 215 (2d Cir. 2019) (citing *Octane Fitness*, 572 U.S. at 554.) "Nonexclusive" and relevant factors to consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "A party seeking an award of attorneys' fees must prove a case is exceptional by a preponderance of the evidence." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-CV-5290 (CM), 2024 WL 3595413, at *22 (S.D.N.Y. July 30, 2024) (citing *Octane Fitness*, 572 U.S. at 557), *reconsid. denied*, 2024 WL 4751281 (S.D.N.Y. Nov. 12, 2024).

Plaintiff argues that this case is "exceptional" within the meaning of the Lanham Act because (1) Ghost Fitness defaulted and its infringement was willful; and (2) Ghost Fitness's refusal to "participate in this litigation at this late stage . . . unduly frustrated the litigation process." (*See* Mem., ECF No. 72 at 28–29.) Plaintiff also argues that an award of attorneys' fees would deter future infringers. (See *id.* at 29.) The Court disagrees.

As a threshold matter, "*Octane Fitness* establishes no presumption—rebuttable or otherwise—that cases involving willful infringement are necessarily 'exceptional.'" *4 Pillar*

*Dynasty LLC*, 933 F.3d at 216.  "Although the Second Circuit has not specifically addressed whether a default is considered 'unreasonable' conduct under *Octane Fitness*, [this] Court shares the views of other courts in this [Circuit] that a defendant's default—standing alone— is not 'exceptional.'" *Antetokounmpo v. Costantino*, No. 21-CV-2198 (JMF)(JLC), 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) (collecting cases), *adopted by* 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022); *see Smart Billiard Lighting, LLC v. Lucid Ball Sports, Inc.*, No. 23-CV-2457 (JMA)(AYS), 2023 WL 4420222, at *3 (E.D.N.Y. July 10, 2023) ("Here, Defendant's default is, by itself, insufficient to deem this an 'exceptional' case."); *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17-CV-1927 (PAE)(GWG), 2020 WL 3564485, at *15 (S.D.N.Y. July 1, 2020) ("[M]erely defaulting is insufficient to make a case exceptional."), *adopted by* 2020 WL 4261818 (S.D.N.Y. July 24, 2020).[6]  Similarly, Ghost Fitness's default is not by itself sufficient to award attorneys' fees here.

The Court also finds that Ghost Fitness did not act to "frustrate[] the litigation process." (Mem., ECF No. 72 at 29.)  "Exceptional" cases with material delays typical involve a history of litigation misconduct from parties or counsel.  *See, e.g.*, *Linhope Int'l Ltd. v. Jianqing Ltd.*, No. 21-CV-00871 (VLB), 2023 WL 2473007, at *6 (D. Conn. Mar. 13, 2023) (noting that a defendant that appears but later abandons the case, "ignoring court orders, violating discovery obligations, making specious arguments, filing frivolous motions or appeals" or otherwise

---

[6] *But see Mister Softee, Inc. v. Diaz*, No. 19-CV-4857 (LDH)(PK), 2020 WL 5665240, at *9–*13 (E.D.N.Y. July 2, 2020) (awarding attorneys' fees after defendant defaulted in Lanham Act case), *adopted by* 2020 WL 5658722 (E.D.N.Y. Sept. 22, 2020); *Next Realty, LLC v. Next Real Est. Partners LLC*, No. 16-CV-6327 (JS)(GRB), 2019 WL 1757781, at *5–6 (E.D.N.Y. Mar. 11, 2019) (same), *adopted by* 2019 WL 1758447 (E.D.N.Y. Mar. 26, 2019).  Both cases cited Section 1117(a), but either did not discuss why the case was exceptional (*Diaz*) or applied the pre-*Octane Fitness* standard (*Next Realty*).

"being unduly litigious or delaying litigation," may warrant a finding of exceptionalism); *Aquavit Pharm., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC)(RWL), 2023 WL 2396511, at *20 (S.D.N.Y. Feb. 17, 2023) (finding case exceptional where defendants, before defaulting, "repeatedly violated court orders imposing prohibitions on use of [plaintiff's marks] and repeatedly failed to cure their contempt, all of which ha[d] unfolded over a period of years"), *adopted by* 2023 WL 2584198 (S.D.N.Y. Mar. 21, 2023); s*ee also Experience Hendrix*, 2020 WL 3564485, at *15–*16 (finding case exceptional where defaulting defendants appeared but repeatedly refused to engage in discovery despite multiple court orders); *Holiday Park Drive, LLC v. Newist Corp.*, No. 23-CV-2623 (AMD)(JMW), 2024 WL 4802751, at *6 (E.D.N.Y. Nov. 15, 2024) (finding case exceptional where defaulting defendant continued infringing on plaintiff's mark even after permanent injunction). None of those circumstances are present here. For nearly three years, Ghost Fitness (and Plaintiff) vigorously litigated the case, including exchanging discovery, seeking court orders to facilitate discovery, and completing depositions. While Ghost Fitness eventually declined to participate, Plaintiff was able to gather all necessary information to establish its claim for damages without contested summary judgment motions or trial, leading to the Court's substantial treble damages recommendation. *Cf. Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG)(RLM), 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019) (finding case exceptional where defaulting defendant frustrated the litigation process, thus preventing plaintiff from obtaining meaningful discovery, including discovery related to damages), *adopted by* 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019). The Court therefore finds that the litigation process unfolded as it would in nearly any other trademark infringement case, and this case does not meet the "exceptional" standard. *See GeigTech E. Bay LLC*, 2024 WL 3595413, at *23 (denying Lanham Act attorneys' fees post-

trial and noting "[t]his was a hard fought, hotly contested case—the sort that does not cry out for an award of attorneys' fees"); *Mister Softee, Inc. v. Abdallah*, No. 22-CV-829 (LJV), 2024 WL 1363677, at *10 (W.D.N.Y. Mar. 30, 2024) (rejecting plaintiff's argument that the case was exceptional because the expense of litigating the case "would be present in *any* case involving willful infringement and a defaulting defendant").

Finally, the Court does not agree that an award of attorneys' fees would advance the dual considerations of compensation and deterrence under the circumstances. *See Fogerty*, 510 U.S. at 534 n.19 (noting deterrence and compensation as permissible factors to designate "exceptional" cases for Lanham Act damages). As noted, the Court's recommended significant statutory damages award will compensate Plaintiff for any use of the Ghost Marks and will certainly deter any potential future infringers. An additional award of attorneys' fees is particularly unnecessary in this case: Ghost Fitness is nearing dissolution and has ceased all operations, including the Facility that motivated Plaintiff's Complaint (*see* ECF No. 59), and no longer has sufficient financial resources to defend against Plaintiff's claims (*see* Tr., ECF No. 78 at 23:25–24:5). *See Hermes Int'l v. Kiernan*, No. 06-CV-3605 (LDW)(WDW), 2008 WL 4163208, at *5 (E.D.N.Y. Aug. 28, 2008) (declining attorneys' fees awards where statutory damages compensated plaintiff and infringing defendant was no longer operating). These facts alone will likely serve as a cautionary tale for any potential infringers on the Ghost Marks; a separate award for attorneys' fees will not.

Considering the totality of the circumstances, the Court finds that Plaintiff has not met its burden to establish this case as "exceptional" within the meaning of the Lanham Act. The Court thus respectfully recommends that Plaintiff's request for attorneys' fees should be denied.

### E.    Costs

Courts may award costs "subject to the principles of equity," 15 U.S.C. § 1117(a), and "typically award costs to the prevailing party or parties in Lanham Act cases." *Streamlight*, 2019 WL 6733022, at *20 (citing *Coty*, 277 F. Supp. 3d at 471).  Unlike attorneys' fees, a Lanham Act case need not be exceptional for the Court to award costs.  *See id.*  Here, Plaintiff requests $402.00 for the court filing fee, which is reflected on the docket.  (*See* Mem., ECF No. 72 at 29; Docket Sheet).  Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$402.00** in costs.

### F.    Pre-Judgment Interest

Plaintiff requests pre-judgment interest calculated from July 15, 2018.  (*See* Mem., ECF No. 72 at 29–30.)  Although 15 U.S.C. § 1117(a) does not provide for pre-judgment interest, the Second Circuit has found that it may be awarded by applying the same "exceptional" case standard that governs attorneys' fees.  *See 4 Pillar Dynasty LLC*, 933 F.3d at 216 (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)).  As this is not an "exceptional" case warranting attorneys' fees (*see* § VI.D., *supra*), the Court respectfully recommends that Plaintiff's request for pre-judgment interest should be denied.

### G.    Post-Judgment Interest

Finally, Plaintiff seeks post-judgment interest.  (*See* Mem., ECF No. 72 at 30).  A plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court."  *Brito*, 2022 WL 875099, at *27.  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court recommends that Plaintiff should be granted post-judgment

36

interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.  Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VII.    <u>CONCLUSION</u>

In sum, Plaintiff has established liability as to its trademark infringement claims (Counts I, IV), false designation of origin claim (Count II), unfair competition claim (Count V), injury to business reputation and mark dilution claim (Count VII), and use of a name with intent to deceive claim (Count VIII).  Accordingly, the Court respectfully recommends that Plaintiff's motion should be **granted in part and denied in part** as follows: (1) the Clerk of Court should enter default judgment against Defendant Ghost Fitness NYC, LLC on Counts I, II, IV, V, VII, and VIII; (2) a permanent injunction should be entered, enjoining Ghost Fitness NYC, LLC from continuing to infringe on the Ghost Marks; (3) Plaintiff should be awarded **$5,051,415.00**, including $5,051,013.00 in treble damages and $402.00 in costs; and (4) post-judgment interest should be assessed at the rate set forth in 28 U.S.C. § 1961.  All other requests should be **denied**.[7]

A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests

---

[7] The proposed judgment at ECF No. 73 should be amended to reflect this Report and Recommendation, if adopted, or the Court's order, if modified.

for an extension of time to file objections shall be directed to Judge Merle.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
August 29, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge